IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VALENZUELA RODRIGUEZ,<br><br>  Plaintiff,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, et al.<br>  Defendants.<br>_____/ | No. 2:07-cv-02531-ATG<br><br>ORDER: (1) STRIKING AMENDED COMPLAINT FILED MAY 5, 2010; (2) GRANTING VOLUNTARY DISMISSAL OF CERTAIN DEFENDANTS; (3) SCREENING FOURTH AMENDED COMPLAINT; AND (4) ORDERING PLAINTIFF TO SHOW CAUSE WHY CERTAIN DEFENDANTS SHOULD NOT BE DISMISSED FOR FAILURE TO EXECUTE SERVICE |

On March 11, 2010, the court granted plaintiff's motion to file a fourth amended complaint.[1] Plaintiff has since filed two amended complaints, a supplement to the complaint, and moved to dismiss portions of his complaint.[2] Defendants have also moved the court to screen plaintiff's fourth amended complaint pursuant to 28 U.S.C. § 1915A.[3]

---

[1] Order, Docket No. 64 (March 11, 2010).

[2] Amended/Supplemental Prisoner Civil Rights Complaint, Docket No. 66 (May 5, 2010); Amended Prisoner Civil Rights Complaint, Docket No. 69 (July 12, 2010); Supplement to Amended Prisoner Civil Rights Complaint, Docket No. 71 (Aug. 9, 2010); Notice of Voluntary Dismissal of Specific Portions of Amended Complaint, Docket No. 74 (March 10, 2011).

[3] Request for Screening of the Fourth Amended Complaint, Docket No. 67 (May 25, 2010).

## I. Procedural and Factual Background

### A. Procedural Background

Plaintiff Luis Valenzuela Rodriguez, a state prisoner appearing *pro se*, first filed this action on November 26, 2007. While finding some colorable civil-rights claims within the initial complaint, the magistrate judge first assigned to this matter dismissed without prejudice many additional claims alleged because the pleading was insufficiently detailed.[4] In granting leave to amend, the order identified multiple deficiencies with the complaint, principally noting that "plaintiff conflates his colorable claims regarding the alleged deprivation of First Amendment religious exercise rights with murkier claims going back to the year 2000."[5]

After Rodriguez filed a far more lengthy amended complaint, the magistrate judge dismissed it in its entirety for failing to provide a clear statement of the claims as required under Rule 8 of the Federal Rules of Civil Procedure.[6] Noting that plaintiff again combined his colorable claims with largely unrelated allegations, the magistrate judge noted that "plaintiff presents the kind of 'mishmash of a complaint' that has been roundly repudiated."[7] The order again detailed multiple deficiencies in the complaint that would have to be corrected for all of plaintiff's alleged claims to survive screening.

After the matter was transferred, this court found that Rodriguez's third amended complaint[8] stated colorable claims that certain defendants had deprived

---

[4] Order, Docket No. 4 (March 11, 2008).

[5] *Id.* at 3.

[6] Order, Docket No. 15 (Sept. 26, 2008) at 6.

[7] *Id.* at 6 (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

[8] Complaint for Damages and Injunctive Relief, Docket No. 22 (May 7, 2009).

2

plaintiff of his constitutional right to the free exercise of his Native American religion.[9] Although the court ordered service of this complaint, Rodriguez moved to file yet another amended complaint, naming additional defendants and claims beyond those screened by this court. As noted, after the court granted this motion,[10] Rodriguez filed two amended complaints, a supplement to the complaint, and then moved to dismiss portions of his amended complaint.

### B.     The Operative Complaint

In granting plaintiff leave to file a fourth amended complaint, the court instructed that any amended complaint should be drafted in accordance with the description provided in plaintiff's motion for leave.[11] Based on plaintiff's filed "Response"[12] to the court's order, the amended complaint filed on May 5, 2010 did not comply with the court's instructions in granting leave to amend under Rule 15(a)(2). The court therefore strikes the May 5 complaint (Docket No. 66) for failure to comply with this court's order.

Plaintiff filed a further amended complaint on July 12, 2010 (Docket No. 69), which his "Response" indicates is his best effort comply with the court's instructions regarding the deficiencies in his prior pleadings. Accordingly, the court now views this July 12 pleading as the operative fourth amended complaint in this matter ("FAC"). Nonetheless, plaintiff subsequently submitted additional pages that he had mistakenly left out of the submitted complaint.[13] The court granted plaintiff's motion

---

[9] Order, Docket No. 27 (June 24, 2009).

[10] Order, Docket No. 64 (March 11, 2010).

[11] Order, Docket No. 64 (March 11, 2010) at 2.

[12] Plaintiff's Response to Court's Order, Docket No. 68 (July 12, 2010).

[13] Supplement to Amended Prisoner Civil Rights Complaint, Docket No. 71 (Aug. 9, 2010).

to supplement and now deems these pages part of the FAC.[14]

### C. Plaintiff's Factual Allegations

Rodriguez is a state prisoner currently detained at Kern Valley State Prison ("KVSP"), to which he was transferred after being detained at Mule Creek State Prison ("MCSP") from 2000 to 2008. The FAC largely focuses on events that occurred during his incarceration at MCSP. Rodriguez alleges that various defendants prevented his practice of his Native American religion at MCSP by restricting and preventing his access to tobacco used in religious ceremonies. He contends that this conduct resulted from the implementation of California Penal Code § 5030.1, which restricts the possession and use of tobacco products by California state inmates but requires regulations to include an exemption for "departmentally approved religious ceremonies." Cal. Penal Code § 5030.1(a).

Rodriguez contends that regulations protecting the use of tobacco for religious ceremonies were not properly drafted or implemented at MCSP. As a result, he contends that the tobacco he used for religious ceremonies was seized in June 2005 and that he was disciplined for possessing it.[15] Although Rodriguez states that he later succeeded through an administrative appeal to be allowed access to tobacco for religious ceremonies, he contends that he was unconstitutionally denied all access to the religious use of tobacco until 2007.[16]

Despite the creation of an approved process for prisoners to obtain tobacco in 2007, Rodriguez contends that various defendants at MCSP retaliated against him for complaining about the denial of this access and his filing of multiple administrative appeals on the issue.   Rodriguez also alleges that in October 2005, certain officers

---

[14] Order, Docket No. 72 (Aug. 19, 2010).

[15] FAC, ¶¶ 50–58.

[16] *Id.* at ¶¶ 60–63.

and cadets desecrated the area used for Native American religious ceremonies by digging it up and breaking certain religious artifacts.[17] He alleges that after a group appeal was filed, prison staff retaliated against the Native Americans at MCSP by drastically restricting access to all their religious ceremonies.[18]

Rodriguez also alleges that prison officials refused to name a native American spiritual advisor and unfairly limited access to various religious artifacts. He further alleges that certain prison guards conspired with other inmates to file false complaints against him. He contends that he was unfairly punished because of these false complaints and eventually transferred to KVSP.

Rodriguez also alleges that MCSP staff violated his rights by repeatedly limiting his access to his legal files, hindering his ability to file petitions, administrative appeals, and federal claims. Further, he alleges that prison officials failed to protect him from a violent attack from another prisoner that occurred on April 11, 2008 at MCSP and restricted his ability to pursue an administrative complaint regarding the attack.

Once at KVSP, Rodriguez alleges that prison officials continued to restrict his ability to practice his Native American religion and to restrict his access to his legal files. He also alleges that he lost his "single-cell status" and designation as an "enhanced out-patient" without due process. Finally, Rodriguez alleges that on February 11, 2009 he was "feeling suicidal and having heart and chest pains," but that prison staff were deliberately indifferent to his physical and psychological condition and delayed his receipt of medical attention.[19] He further claims that he did not

---

[17]*Id.* at ¶ 95.

[18]*Id.* at ¶¶ 96–97.

[19]Supplement to Amended Prisoner Civil Rights Complaint, Docket No. 71 (Aug. 9, 2010).

5

receive proper medical care and that prison staff did not follow instructions from his doctors regarding his medical care.

## II.  Discussion

### A.  Voluntary Dismissal of Claims

On March 10, 2011, Rodriguez filed a notice of voluntary dismissal of claims against certain named defendants at KVSP.  Pursuant to this notice, the court dismisses without prejudice all claims against defendants Garza, Ozuarte, and Harrington under Rule 41(a).

### B.  Screening of the Fourth Amended Complaint

The FAC includes more than forty pages of factual allegations that describe various conflicts with California prison officials over the course of nearly a decade. The result is a confusing narrative that merges disparate events into a continuous stream of allegations involving numerous defendants.  Indeed, the FAC names over fifty defendants, including elected state officials, prison officials, prison staff, and other inmates.

Rodriguez alleges claims under 42 U.S.C. § 1983 based on multiple violations of his rights under the U.S. Constitution, including his rights under the First Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment.[20] Rodriguez also alleges various state law claims based on the California Constitution, California Penal Code, California Civil Code, and California Code of Regulations.[21] Rodriguez seeks monetary and injunctive relief based on these claims.[22]  Defendants have moved the court to screen the complaint pursuant to 28 U.S.C. § 1915A.

---

[20] FAC, ¶¶ 229–51.

[21] *Id.* at ¶¶ 252–54.

[22] *Id.* at pp. 60–62.

6

### 1. Standard of Review

The court is required to review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the allegations are "frivolous, malicious, . . . fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). When reviewing the adequacy of a complaint under § 1915A(b)(1), the court applies a standard similar to that provided under Rule 12(b)(6). *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

In determining whether the FAC states a claim, the court accepts plaintiff's factual allegations as true and views all inferences in a light most favorable to him. *See Hamilton v. Brown*, 630 F.3d 889, 892 (9th Cir. 2011). The court does not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended, 275 F.3d 1187. Because plaintiff is proceeding *pro se*, the court construes the FAC liberally. *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (per curiam).

Rule 8 states that a civil complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

7

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* (internal quotation marks and citation omitted).

### 2.   Plaintiff's Claims

As noted previously, Rodriguez states some colorable claims related to alleged intrusions on his right to freely exercise his Native American religion. He obscures these viable claims, however, by including in the FAC a laundry list of unrelated allegations and undefined claims against dozens of different defendants. Indeed, the FAC contains over forty pages of factual allegations spanning almost a decade and then summarily lists numerous causes of action, leaving the court to guess at the legal theory and factual allegations supporting most of the claims.

The numerous pleading problems caused by this scattershot approach were detailed by Magistrate Judge Hollow in his orders reviewing the initial complaint and first amended complaint.[23] These orders specifically noted the pleading requirements imposed by Rule 8. Despite numerous additional amendments since transfer to this court, Rodriguez continues to expand, rather than focus, the scope of his claims. In order to finally end the cycle of amendment that has stalled this matter, the court has now undertaken the time-consuming task of sifting through the operative complaint to separate the viable claims that should move forward from those that should not.

#### a.   State Law Claims

Section VI of the FAC alleges defendants breached various duties owed plaintiff and violated various rights held by plaintiff, citing without explanation to provisions of the California Constitution, California Penal Code, California Civil

---

[23] Order, Docket No. 4 (March 11, 2008).

Code, and California Code of Regulations.[24] Plaintiff asserts these claims generically against "each of the defendants" and fails to identify the factual basis or legal theory for any of them. These undefined state law claims do not satisfy Rule 8 because they fail to provide the individual defendants with adequate notice of the specific claims being asserted against each of them or the specific factual allegations upon which they are based. *See Twombly*, 550 U.S. at 555; *Page v. Stanley*, No. 11-02255 CAS (SS), 2011 U.S. Dist. LEXIS 91358, at *5 (C.D. Cal. Aug. 16, 2011) (dismissing prisoner complaint under Rule 8 where "Plaintiff's vague claims fail to clearly identify the incident giving rise to each individual claim and the specific Defendants Plaintiff believes are liable for each of those claims"). Further, the FAC's lack of specificity prevents the court from being able to determine if a legitimate state law claim has been stated. Therefore plaintiff's state law claims are dismissed without prejudice.

### b. Federal Claims under 42 U.S.C. § 1983

As noted, Rodriguez alleges claims under 42 U.S.C. § 1983 based on violations of his rights under the U.S. Constitution, including his rights under the First Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment. "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrader,* 879 F.2d 583, 587 (9th Cir. 1989).

All named defendants are identified as state officials acting under color of state law,[25] but Rodriguez fails to identify whether he is suing defendants in their personal or official capacity. "Where state officials are named in a complaint which seeks

---

[24] FAC, ¶¶ 252–54.

[25] Rodriguez alleges that the other inmates named in this matter are paid "employee-agent-informants." FAC, ¶¶ 248–49.

9

damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities." *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994) (noting that "[a]ny other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred," citing *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990). Accordingly, the court construes plaintiff's claims as being stated against defendants in their personal capacities.

To establish liability under § 1983, plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, plaintiff must demonstrate that each defendant, through his or her own individual actions, violated plaintiff's constitutional rights. *Id.* at 1948–49.

      **i.    Violation of Plaintiff's First Amendment Right to Free Exercise of Religion**

Plaintiff's initial claim is that he was unconstitutionally denied access to tobacco necessary for Native American religious ceremonies following the passage of California Penal Code § 5030.1. Adopted in 2005, the statute states: "The possession or use of tobacco products by inmates under the jurisdiction of the Department of Corrections is prohibited. The Director of Corrections shall adopt regulations to implement this prohibition, which shall include an exemption for departmentally approved religious ceremonies." Cal. Penal Code § 5030.1(a). Rodriguez alleges that state and prison officials violated his First Amendment right to free exercise of his Native American religion by failing to properly implement and

10

apply regulations related to the religious exemption clause under § 5030.1, resulting in his total inability to possess tobacco for use in religious ceremonies until 2007.

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342). Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Rodriguez states sufficient allegations against former MCSP wardens Rosanne Campbell and R. Subia for his First Amendment free exercise claims against them to survive screening. Rodriguez alleges that in violation of the religious exemption provision under § 5030.1, Campbell issued a directive in June 2005 that resulted in the confiscation of the tobacco he held for use in religious ceremonies.[26] Rodriguez further contends Campbell and Subia were required to issue clear procedures under which the religious exemption provision under § 5030.1 would be implemented, asserting that Campbell held this responsibility until 2006 at which time Subia assumed the role as warden.[27] He alleges that their failure to provide clear policies that implemented the religious exemption under § 5030.1 resulted in multiple violations of his First Amendment rights because he was denied all access to tobacco for use in Native American ceremonies until 2007.

Rodriguez also states sufficient allegations against officers Cagel and McNeil for his First Amendment free exercise claims against them to survive screening.

---

[26]*Id.* at ¶¶ 50–51.

[27]*Id.* at ¶¶ 72, 233.

11

Rodriguez contends that Officer Cagel confiscated the tobacco he held for religious use in 2005, despite knowing that he was regularly involved in Native American religious ceremonies at which tobacco was used.[28] Rodriguez also alleges that Cagel disciplined him for possessing the tobacco and that Officer McNeil reviewed and upheld this punishment, refusing to return the tobacco for religious practices.[29]

Rodriguez fails to state allegations of direct personal conduct by other prison management, staff, or state officials that resulted in a denial of his access to tobacco for religious practices between 2005 and 2007. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."). Only Cagel and McNeil are alleged to have been directly involved with seizure of plaintiff's tobacco in 2005, and except for Campbell and Subia, plaintiff's claims against state officials and prison management are based purely on their supervisory responsibilities, not on any alleged personal conduct. *See Iqbal*, 129 S. Ct. at 1949 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Accordingly, plaintiff's § 1983 claims based on the implementation of § 5030.1 between 2005 and 2007 survive as to defendants Campbell, Subia, Cagel, and McNeil, but are dismissed without prejudice as to all other defendants.

          **ii. Fourteenth Amendment Equal Protection Claims**

Rodriguez also broadly alleges that his Fourteenth Amendment right to equal protection under the law was also violated by defendants in connection with the implementation § 5030.1 at MCSP. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of*

---

[28] *Id.* at ¶ 53.

[29] *Id.* at ¶¶ 53–55, 241, 244.

*Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 321–22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321–22; *Shakur*, 514 F.3d at 891; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001).

In connection with the implementation of § 5030.1 at MCSP between 2005 and 2007, plaintiff's claims under the Fourteenth Amendment fail because he does not allege facts suggesting that prison officials or staff discriminated against him on account of his Native American religion. In particular, there is no suggestion that restrictions on tobacco use were applied differently to other religious groups. Accordingly, Rodriguez fails to state an equal protection claim against any defendant in connection with the implementation of § 5030.1 at MCSP between 2005 and 2007. *See Garret v. Billings*, No. 1:10-cv-00779-GBC (PC), 2011 U.S. Dist. LEXIS 56460, at *9 (E.D. Cal. May 25, 2011) (finding that a prisoner failed to state an equal protection claim where the complaint did not demonstrate that the alleged discrimination was based on his religion).

### iii. Due Process Claim

Rodriguez also alleges that the disciplinary action against him in 2005 for possessing tobacco violated his rights under the Due Process Clause because his

tobacco was not returned and he was not allowed to attend a disciplinary hearing.[30] The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68, (1983). Liberty interests created by state law are generally limited to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In analyzing whether a hardship is atypical and significant, three guideposts to consider are: (1) the conditions of confinement; (2) the duration of the condition and degree of restraint imposed; and (3) whether the disciplinary sanction will affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

The seizure of plaintiff's tobacco is not the type of atypical and significant hardship protected by the Due Process Clause as a liberty interest because the seizure did not materially affect the conditions of his confinement. *See Jackson v. Carey,* 353 F.3d 750, 756 (9th Cir. 2003); *Jacks v. Crabtree*, 114 F.3d 983, 986 n.4 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship). Further, plaintiff does not identify any additional punishment incurred as a result of the disciplinary action. Accordingly, plaintiff's due process allegations fail to state a claim because they do not identify a liberty interest denied to him. *See Hai Van Le v. Arizona Dep't of Corr.*, No. CV 11-0744-PHX-RCB-ECV, 2011 U.S. Dist. LEXIS 58059 (D. Ariz. May 31, 2011) (finding due process claim fails where "Plaintiff fails to allege that he was in any way punished, much less that he was subjected to an

---

[30]*Id.* at ¶ 241.

atypical and significant hardship in relation to the ordinary incidents of incarceration as a result of the disciplinary charge"). Accordingly, this claim is also dismissed without prejudice.

### c. Joinder of Additional Defendants under Rule 20

The court has addressed above the relevant claims and defendants connected with what it views as the primary events alleged in the complaint: the implementation of § 5030.1 at MCSP in 2005 through 2007. Rodriguez has failed to allege sufficient facts of personal involvement to support the joinder of any additional claims under Rule 18(a) against defendants Campbell, Subia, Cagel, or McNeil. Nonetheless, Rodriguez alleges multiple additional claims against dozens of other defendants based on separate acts occurring both before and after the events connected with the initial implementation of § 5030.1 at MCSP. This joinder of multiple unrelated claims and defendants in the FAC violates Rule 20 of the Federal Rules of Civil Procedure.

Under Rule 20(a)(2), permissive joinder of multiple defendants in a single lawsuit is allowed only if: (1) a right to relief is asserted against each defendant that relates to or arises out of the same transaction or occurrence or series of transactions or occurrences; and (2) any question of law or fact common to all defendants arises in the action. Unrelated claims involving different defendants belong in different suits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (finding prisoner improperly brought complaint raising fifty distinct claims against twenty-four defendants); *Oliver v. Noll*, No. C 09-3840 RMW (PR), 2010 U.S. Dist. LEXIS 106930, at *4 (N.D. Cal. Sept. 30, 2010) ("[W]hile multiple claims against a single party may be alleged in a single complaint, unrelated claims against different defendants must be alleged in separate complaints."). These limitations on the joinder of claims are intended "to prevent the sort of morass" that plaintiff's multi-claim, multi-defendant complaint

presents.[31]  *George*, 507 F.3d at 607.

Plaintiff's repeated failure to narrow his claims to conform with Rule 20 is the primary reason his complaint has been repeatedly dismissed for further amendment. Dismissal of the entire action is not necessary, however, as this pleading error can be solved by dismissing improperly joined parties. *See* Fed. R. Civ. P. 21; *Whittington v. Cal. Dep't of Corr. & Rehab.*, No. C 09-2636 SI (pr), 2010 U.S. Dist. LEXIS 24776, at *2–4 (N.D. Cal. Mar. 3, 2010) (dismissing improperly joined defendants without prejudice to those claims being refiled in a separate action).

Rodriguez alleges that after procedures were adopted in 2007 that allowed him some limited access to tobacco for use in religious ceremonies, certain defendants retaliated against him for having successfully appealed the prior restrictions. These claims of retaliation are made against separate defendants and are unrelated to the initial implementation of § 5030.1. Likewise, plaintiff's further allegations—that Native American ceremonial grounds at MCSP were desecrated in 2005, that he was not adequately protected from attack or given proper medical treatment at MCSP, that false complaints were filed against him, or that his cell status and rights to free exercise and are limited at KVSP—each involve separate events and defendants from his claims related to the initial implementation of § 5030.1. While these allegations might independently support claims under § 1983, they are not properly joined in this action because they arise from different events and involve different defendants. *See* Fed. R. Civ. P. Rule 20. Pursuant to Rule 21, the court therefore dismisses all defendants and claims unrelated to the implementation of § 5030.1 at MCSP between 2005 and 2007. This dismissal is without prejudice to plaintiff refiling these claims in a separate case.

---

[31] Although *pro se* litigants are held to less stringent standards than represented parties, *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003), they must comply with the procedural or substantive rules of the court. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

### C. Service of the Fourth Amended Complaint and Required Responses from Defendants and Plaintiff

For the foregoing reasons, the court finds that plaintiff has stated sufficient allegations against defendants Campbell, Subia, Cagel, and McNeil for his § 1983 claims to violations by these defendants of his First Amendment right to free exercise of his Native American religion to pass screening under 28 U.S.C. § 1915A. Defendants Campbell and Subia have previously waived formal service under Rule 4(d).[32] Accordingly, the court orders these defendants to file either a responsive pleading or motion under Rule 12 within sixty days of the date of this order.

The U.S. Marshals Service was previously unsuccessful, however, in attempts to personally serve defendants Cagel and McNeil. The Marshals Service could not locate an Officer Cagel or a Sergeant McNeil currently working within the California prison system.[33] Rule 4(m) requires a plaintiff to serve a defendant within 120 days after it files the complaint. Fed. R. Civ. P. 4(m). A court must dismiss a case without prejudice if a plaintiff has not complied with Rule 4(m) unless the plaintiff shows good cause for its failure to serve a defendant. *Id*. If good cause appears, the court must extend the time for service for an appropriate period. *Id*. Whether good cause exists is determined on a case-by-case basis. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). A plaintiff may show good cause where he attempted to serve a defendant but not yet completed it, was confused about the requirements for service of process, or was prevented from serving a defendant because of events outside of his control. *See Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985).

The court orders Rodriguez to show good cause within thirty days why his

---

[32] Waiver of Service, Docket No. 46 (Nov. 13, 2009).

[33] Summons Returned Unexecuted, Docket No. 35 (Oct. 2, 2009); Summons Returned Unexecuted, Docket No. 32 (Sept. 21, 2009).

17

claims against defendants Cagel and McNeil should not be dismissed for failure to execute service. Plaintiff's response should include new information that might allow the Marshals Service to locate these defendants or an explanation of how such information might be reasonably obtained.

### III. Conclusion

The court finds that plaintiff has stated sufficient allegations against defendants Campbell, Subia, Cagel, and McNeil for his § 1983 claims to violations by these defendants of his First Amendment right to free exercise of his Native American religion to pass screening under 28 U.S.C. § 1915A. All other claims against these defendants are dismissed without prejudice. Further, all other defendants are dismissed without prejudice under Rule 21. While Rodriguez may move for leave to amend his complaint yet again, the court believes that further amendment at this point is likely futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355–56 (9th Cir. 1996) (noting that prior amendment and futility weigh heavily in favor of denying further leave to amend). Any motion for leave to amend must be filed within thirty days of the date of this order.

Defendants Campbell and Subia are ordered to file a responsive pleading or motion under Rule 12 within sixty days of the date of this order. Plaintiff is ordered to show cause within thirty days why his claims against defendants Cagel and McNeil should not be dismissed under Rule 4 for failure to execute service.

Dated: October 4, 2011                                /s/ Alfred T. Goodwin

                                                                       ALFRED T. GOODWIN
                                                                       United States Circuit Judge
                                                                       Sitting by designation